**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KRISTIN WILLIAMS,** | : | **No. 3:12cv2074** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **WESTERN WAYNE SCHOOL** | : | |
| **DISTRICT, ANDREW FALONK and** | : | |
| **WESTERN WAYNE EDUCATIONAL** | : | |
| **ASSOCIATION,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is Defendants Western Wayne School District and

Andrew Falonk's (collectively the "District Defendants") motion to dismiss

Plaintiff Kristin Williams' (hereinafter "plaintiff") complaint.  This matter is

briefed and ripe for disposition.

**Background**

Defendant Western Wayne School District employs plaintiff as an

occupational school therapist.  This action arises from plaintiff's failure to

receive increased  compensation after she obtained a national board

certification.  Plaintiff contends that the facts surrounding her failure to receive

such increased compensation gives rise to claims of gender discrimination

and civil rights violations.  The well pleaded facts contained in the complaint

are as follows.

Plaintiff is a resident of Lake Ariel, Wayne County, Pennsylvania, and

she has been employed by Defendant Western Wayne School District (hereinafter the "School District") since August 2003. (Doc. 1, Compl. (hereinafter "Compl.") ¶¶ 1, 12). The School District is a government entity located in Wayne County, Pennsylvania, which is led by Defendant Andrew Falonk (hereinafter "Falonk"), the Superintendent of Schools for the School District. (Id. ¶¶ 2-3). The School District is also led by a Board of Education, whose members share policymaking responsibilities with Falonk. (Id. ¶ 18).

Plaintiff works as an occupational therapist at the School District. (Id. ¶ 12). Plaintiff graduated from Misericordia University in Dallas, Pennsylvania in 2000 with a bachelor's degree in health science and a master's degree in occupational therapy. (Id. ¶ 14). Prior to taking her current job with the School District, plaintiff worked as a staff occupational therapist at Kessler Institute for Rehabilitation in Chester, New Jersey. (Id. ¶ 16). Plaintiff also has experience working as an in-home occupational therapist. (Id. ¶ 17). Since the time she was hired in August 2003, plaintiff has maintained a certification with the American Occupational Therapy Association as well as a license as an occupational therapist with the Commonwealth of Pennsylvania.[1] (Id. ¶ 12). Plaintiff is currently enrolled at Misericordia

_____

[1] Although the complaint alleges that plaintiff is "certified with the American Occupational Therapy Association," plaintiff states in her brief that she is "certified with the National Board for Certification of Occupational

2

University in an occupational therapy doctoral program and is expected to graduate in December 2014.  (Id. ¶ 15).

Plaintiff is also a member of Defendant Western Wayne Educational Association (hereinafter the "WWEA"), which is a local affiliation of the Pennsylvania State Education Association.  (Id. ¶¶ 4, 13).  The WWEA serves as the bargaining unit for teachers and occupational therapists employed by the school district.  (Id. ¶ 19).  As of July 1, 2009, the School District and the WWEA entered into a contract that remains in effect until June 30, 2014.  (Id. ¶ 20).  Prior to the execution of this contract, plaintiff and other health care professionals employed with the School District requested that they be granted the same or similar benefits as the teachers with respect to national board certifications.  (Id. ¶ 23).  Specifically, Article 37, subparagraph 7 of the contract provides that employees with national board certifications are granted salary increases for attaining such recognition within their field.  (Id. ¶ 24).

Despite the fact that she had obtained a national certification and received excellent administrative reviews, plaintiff has yet to receive an

_____

Therapy ('NBCOT')."  (Compl. ¶ 12; Doc. 16, Pl.'s Mem. of Law in Opp'n at 3). The court will read this inconsistency in the light most favorable to plaintiff and take as true the fact that plaintiff was certified by both the American Occupational Therapy Association and the NBCOT.

increase in her compensation for attaining national certification. (Id. ¶¶ 22, 25). Unlike plaintiff, other similarly situated teachers and non-medical professionals employed within the School District have automatically received salary increases when they attained a national board certification. (Id. ¶ 26). Plaintiff maintains that many of the similarly situated School District employees who received increased remuneration include males and/or younger employees. (Id. ¶¶ 27-28). Plaintiff also asserts that defendants deliberately sought to provide more favorable treatment to these similarly situated male and/or younger employees, pursuant to a School District practice and custom. (Id. ¶ 29).

On October 16, 2012, plaintiff filed the instant three-count complaint. (See id.) In Count I, plaintiff alleges that the District Defendants are liable under Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991, for gender-based discrimination. (Id. ¶¶ 30-35). In Count II, plaintiff avers that the District Defendants are liable for violations of her First and Fourteenth Amendment rights. (Id. ¶¶ 36-46). In Count III, plaintiff charges the WWEA with failing to "exercise its contractual negotiations and contract with the [School District] to the detriment of the Plaintiff." (Id. ¶¶ 47-53). On December 20, 2012, the District Defendants filed the instant motion to dismiss, (Doc. 10, Mot. to Dismiss), bringing this case to its current posture.

4

**Jurisdiction**

Plaintiff asserts claims for gender discrimination under 42 U.S.C. § 2000e, *et seq.*, and civil rights violations under 42 U.S.C. § 1983. The court has jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all actions arising under the Constitution, laws, or treaties of the United States."

**Standard of Review**

The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.[2] All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must

---

[2] Although the District Defendants assert their failure to exhaust administrative remedies defense under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), the court will only consider the District Defendants' arguments under Rule 12(b)(6). The Third Circuit Court of Appeals determined in Anjelino v. The New York Times Co., that a motion to dismiss for failure to exhaust administrative remedies should be decided pursuant to Federal Rules of Civil Procedure 12(b)(6), rather than Rule 12(b)(1). 200 F.3d 73, 87 (3d Cir. 1999); see also DiBartolo v. City of Phila., 159 F. Supp. 2d 795, 799-800 (E.D. Pa. 2001) (considering a motion to dismiss under Rule 12(b)(6) when the defendant asserted that the Public Employee Relations Act required the arbitration of plaintiff's claims).

describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a

6

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

The Supreme Court has counseled that a court examining a motion to dismiss should, "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Next, the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id. at 681.

**Discussion**

The District Defendants advance several arguments in their motion to dismiss and assert they should be dismissed from this action. Plaintiff

7

counters that dismissal of either the School District or Falonk would be inappropriate at this stage in the litigation. The court will examine the District Defendants' arguments with respect to Count I and II–the two counts in which the School District and Falonk are named.

### A. Count I: Title VII Gender Discrimination

Count I of the complaint charges the District Defendants with gender discrimination pursuant to Title VII of the Civil Rights Act of 1964. The District Defendants seek dismissal of this count for failure to exhaust administrative remedies because plaintiff failed to allege that she filed discrimination charges with the Equal Employment Opportunity Commission ("EEOC") or the Pennsylvania Human Relations Commission ("PHRC"). The court agrees that this error is fatal to Count I, and Count I will be dismissed.[3]

As a prerequisite to filing a lawsuit in federal court for gender discrimination, a plaintiff is required to exhaust administrative remedies with the EEOC or an equivalent state or local agency. See Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997) ("[T]he causes of action created by Title

---

[3] Defendant also argues that Count I should be dismissed because plaintiff neglected to pursue arbitration as required under the Public Employee Relations Act, 43 PA. CONS. STAT. ANN. § 1101.903, and because plaintiff failed to adequately identify male employees that received more favorable treatment. The court will not address these arguments with respect to Count I because it finds plaintiff's failure to exhaust administrative remedies with the EEOC or PHRC to be dispositive.

VII do not arise simply by virtue of the events of discrimination which that title prohibits. A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC for conciliation or resolution." (internal quotations omitted)); see also Joyner v. Sch. Dist. of Phila., 313 F. Supp. 2d 495, 500 (E.D. Pa. 2004) ("It is well settled that as a pre-condition to filing suit under Title VII, a plaintiff must first file charges with the EEOC within 180 days of the alleged discriminatory act." (internal quotations omitted)).

In this case, plaintiff alleges that her union entered into a professional employee's contract with the School District in 2009 and that this contract remains in effect until 2014. (Compl. ¶ 20). Plaintiff avers that she was not given the increased salary she was owed under the contract because of her gender. (Id. ¶¶ 25-28). The complaint, however, does not allege that plaintiff exhausted administrative remedies with the EEOC or PHRC. Additionally, in her brief in opposition to the instant motion, plaintiff largely ignores the District Defendants' arguments with respect to her failure to exhaust her Title VII administrative remedies. Rather, plaintiff relies upon the allegation that her "claims are such that there is no need to exhaust any administrative requirements." (Id. ¶ 10).

Simply alleging that administrative remedies need not be exhausted does not excuse plaintiff from the clear requirement imposed by federal anti-discrimination law. Plaintiff cites no legal support to justify her failure to first file with an appropriate administrative agency prior to initiating this action, and, upon further research, the court finds none. Plaintiff's failure to plead an exhaustion of administrative remedies and her failure to explain why she neglected to exhaust her administrative remedies are fatal to this claim. Thus, the court must grant the District Defendants' motion with respect to Count I and dismiss plaintiff's claim for gender discrimination.

## B. Count II: Section 1983 Fourteenth Amendment Violation

In Count II of the complaint, plaintiff alleges that the District Defendants violated her Fourteenth Amendment right to equal protection under the law by treating other similarly situated employees more favorably than plaintiff.[4] Specifically, plaintiff asserts that the District Defendants "provided more favorable treatment to similarly situated males and/or younger individuals by allowing said individuals salary increases for attaining National Board

---

[4] In the complaint, plaintiff premises her Section 1983 claim on both the First and Fourteenth Amendments to the United States Constitution. (Compl. ¶¶ 36-46). In her brief in opposition to the motion to dismiss, plaintiff concedes that the First Amendment claims should be dismissed. (Doc. 16, Pl.'s Mem. of Law in Opp'n at 7). As such, the court will dismiss plaintiff's claims with respect to the First Amendment.

Certifications." (Compl. ¶ 39). Moreover, plaintiff alleges that the District Defendants engaged in a conspiracy to violate her rights. (Id. ¶ 44).

The District Defendants present three arguments with respect to plaintiff's claims under section 1983. First, the District Defendants contend that plaintiff's section 1983 claim should be dismissed because the Public Employee Relations Act, 43 PA. CONS. STAT. ANN. § 1101.903 requires that such claims be first brought to arbitration before suit can be filed. Second, the District Defendants argue that plaintiff failed to state the essential elements of an equal protection claim. Third, the District Defendants assert that plaintiff failed to adequately state a claim for conspiracy.[5] The court will assess these arguments in turn.

### 1. Public Employee Relations Act

The District Defendants first argue, generally, that plaintiff's claims arise under the contract in place between the WWEA and the School District, and that Pennsylvania law requires such claims to first go to arbitration. Under the Public Employee Relations Act, "[a]rbitrations of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining

---

[5] The court also notes that the District Defendants assert that Falonk is entitled to qualified immunity. The court, however, will not address this argument in light of its conclusion that plaintiff failed to state a claim under Counts I or II with respect to Falonk.

11

agreement is mandatory."  43 PA. CONS. STAT. ANN. § 1101.903.  Courts

applying Pennsylvania law have dismissed claims that require the court to

interpret a public employee's contract.  See Dykes v. Se. Pa. Transp. Auth.,

68 F.3d 1564, 1569-70 (3d Cir. 1995) (holding that issues regarding the

application of a drug testing program provided for in the collective bargaining

agreement must be referred to arbitration); DiBartolo, 159 F. Supp. 2d at 799-

800 (discussing the plaintiff's claim for breach of a collective bargaining

agreement for failure to allege an attempt to resolve a claim through

arbitration); Shumake v. Phila. Bd. of Ed., 686 A.2d 22, 24-25 (Pa. Super. Ct.

1996) (affirming the dismissal of an action in which the plaintiff sought

damages for the breach of a public employee collective bargaining

agreement).

The claims in Count II of the complaint, however, are not in the category

of claims in which arbitration is compulsory under Public Employees Relations

Act.  Count II alleges that the District Defendants violated plaintiff's civil rights

by denying benefits to her that were granted to other, similarly situated

individuals.  Count II thus depends upon the allegation that plaintiff was

targeted and denied benefits because of her gender; this claim does not arise

out of an alleged breach of the professional contract at issue.

In this respect, the court notes that the instant case differs from that of

Dykes v. Southeastern Pennsylvania Transportation Authority.  In Dykes, the

plaintiff, a bus driver, was discharged after he failed to submit to a drug test.

68 F.3d at 1565-66.  The bus driver's union filed three levels of grievances,

and at each level, the discharge was upheld on the basis that reasonable

suspicion existed to justify the drug test.  Id. at 1566.  The bus driver filed a

section 1983 civil rights action alleging violations of his Fourth Amendment

right to be free from unreasonable searches and his Fourteenth Amendment

due process rights.  Id.  The Third Circuit held that the issue of whether the

drug test was conducted with reasonable suspicion is a question arising under

the contract, which defined reasonable suspicion for the purposes of

conducting drug tests.  Id. at 1570.  The Third Circuit deferred to the outcome

of the grievance procedures because the grievance officers frequently

determined what is needed for reasonable suspicion under the professional

contract at issue.  Id.  The Third Circuit also denied the bus driver's due

process claim on the basis that he had sufficient opportunities to arbitrate his

action under the contract.  Id. at 1572.

Unlike the bus driver in Dykes, the plaintiff in the instant case raises

equal protection claims that stretch beyond the definitions contained in the

contract at issue.  Nothing in the District Defendants' brief indicates that

grievance officers would be equipped to handle constitutional claims only

13

tangentially related to the contract.  Thus, the court will deny the District

Defendants' motion to dismiss Count II on the basis that plaintiff was required

to arbitrate her constitutional claims.

## 2. Failure to State an Equal Protection Claim

The District Defendants next argue that plaintiff failed to state an equal

protection claim as a matter of law.  The District Defendants contend that

plaintiff failed to allege sufficient facts to warrant the continuation of this claim.

Moreover, the District Defendants challenge plaintiff's abilities to maintain an

action directly against the School District pursuant to Monell v. Department of

Social Services.  After careful consideration, the court finds that plaintiff

adequately stated a claim for an equal protection violation with respect to the

School District, but not Falonk.

Section 1983 offers private citizens a cause of action for violations of

federal law by state officials.  See 42 U.S.C. § 1983.  The statute provides, in

pertinent part, as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

Id.  To state a claim under section 1983, a plaintiff must allege "the violation of

14

a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under the color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

In the instant case, the parties agree that the District Defendants were acting under the color of state law, but the parties dispute whether plaintiff alleged a valid claim for a violation of her equal protection rights. "To bring a successful claim under 42 U.S.C. § 1983 for denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990) (citing Baston v. Kentucky, 476 U.S. 79, 93 (1986)). Further, the plaintiff must allege that he "'receiv[ed] different treatment from that received by other individuals similarly situated.'" Id. (quoting Kuhar v. Greenburg-Salem Sch. Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980)).

Civil rights claims, such as those for violations of the equal protection clause, cannot be maintained against a governmental organization on the theory of respondeat superior. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). Rather, governmental entities are only liable under section 1983 when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [the] injury . . . ." Id.

15

Courts have clarified that government organizations can be liable under Section 1983 for the civil rights violations of its employees in the following situations:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, Jett v. Dallas Independent School District, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes, City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005).

Here, plaintiff alleges that School District officials discriminated against her because of her gender. Specifically, she contends that she was denied increased compensation while similarly situated male employees were given such raises. (Compl. ¶¶ 25-28). Additionally, plaintiff avers that School District officials' "conduct [was] part of a plan, pattern, or practice of discrimination and retaliation which may affect employees similarly situated to the Plaintiff." (Id. ¶ 29). Although plaintiff's allegation are not laced with details, she nonetheless states the minimal factual averments to state a claim, at this early stage in the litigation, for an equal protection violation against the

School District.  Plaintiff alleged that she was discriminated against because of her membership in a suspect class and that this discrimination was the result of an official practice or custom.  As such, the court will deny the District Defendants' motion to dismiss the equal protection claim against the School District.[6]

The equal protection allegations against Falonk, however, are insufficient to survive a motion to dismiss.  For a section 1983 claim against an individual to survive a motion to dismiss, the plaintiff must allege "personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior."  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

Here, the allegations in the complaint do not allege that Falonk did anything.  Falonk is only mentioned in three paragraphs of the complaint, which provides as follows:

_____

[6] Rather than accepting the allegations in the complaint as true, as we are required to do at the motion to dismiss stage, the District Defendants attached exhibits not included with the complaint.  One of these exhibits is one page (page number 22) of the professional employee's contract at issue in this case.  (Doc. 10-5, Ex. 2, Professional Employees Contract).  The District Defendants use this page to challenge the factual averments in the complaint and contend that plaintiff was not entitled to the increased compensation she claims.  While this contract may questionably be a public document, the court will not consider such an incomplete document in the face of plaintiff's allegations without the benefit of discovery.

> Defendant, Andrew Falonk was Superintended [sic] of Schools of the Defendant School District and by virtue of said position was a policy maker and/or official for the Defendant School District and maintained registered offices located at 2132 Easton Turnpike, PO Box 220, South Canaan, Wayne County, Pennsylvania.
>
>       *      *      *
>
> The Defendant School District is governed by a Board of Education which is the governing body and its members are, in addition to the Superintendent, policymakers and/or officials of said Defendants.
>
>       *      *      *
>
> Defendant Falonk was a high ranking official and/or policymaker within the School District, an entity controlled by the Board of Education and by virtue of his position was the decision maker who had final authority to establish and/or engaged in a course of conduct and/or practice as state officials.

(Compl. ¶¶ 3, 18, 43).

The complaint does not allege that Falonk violated plaintiff's civil rights. Rather, it primarily alleges that he was a Superintendent and that he was one of several individuals in the School District with policymaking authority. Although the complaint states that plaintiff was the victim of a discriminatory policy, it is devoid of any allegations of who created, enforced and/or approved of this policy. Thus, the equal protection claim will be dismissed with respect to Falonk.

### 3. Failure to State a Conspiracy Claim

The District Defendants also contend that plaintiff failed to state a

conspiracy claim as a matter of law. Generally, to establish a conspiracy under § 1983, "'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of state law.'" Laurensau v. Romarowics, No. 13-1283, 2013 WL 2636643, at *3 (3d Cir. June 13, 2013) (quoting Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993)). More specifically, to assert a conspiracy under section 1983, a plaintiff must establish the elements of a state law conspiracy claim. Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974). In Pennsylvania, "[t]he essential elements of a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. Ct. 2008). Additionally, under the "intracorporate conspiracy" doctrine, no claim for conspiracy can arise between an entity and its employees. See Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) ("an entity cannot conspire with one who acts as its agent.").

In this case, the entirety of plaintiff's conspiracy claim is contained in paragraph 44 of the complaint, which states as follows:

The Defendants acted in conspiracy and each of them acted in reckless disregard and deliberate indifference to the Plaintiff's rights as aforementioned, and by doing so, the Defendants engaged in a custom or practice in retaliating against female health professionals within the Defendant School District. Specifically, the practices by the Defendants were clearly designed to deprive the Plaintiff of the following rights, privileges and immunities secured to her by the Constitution of the United States:

> a. The right of the Plaintiff to be given the equal protection under the law and to be treated the same as similarly situated male and/or younger individuals who were granted salary increases by virtue of their attaining or having board certification which is in violation of the Plaintiff's rights as guaranteed under the Fourteenth Amendment to the Constitution of the United States.

> b. By reason of the afore-said conduct, the Plaintiff's civil rights as guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 were violated.

(Compl. ¶ 44).

The allegations in the complaint are insufficient to support a claim of civil conspiracy under section 1983. As is explained above, plaintiff only states a valid equal protection claim against the School District. By failing to allege that two or more persons acted with a common purpose to violate her rights, plaintiff cannot sustain a conspiracy claim. Moreover, the intracorporate conspiracy doctrine prevents plaintiff from stating a conspiracy claim against the School District based upon the actions of those serving as its agents. Accordingly, the court will dismiss plaintiff's conspiracy claim.

### C. Punitive Damages

The District Defendants aver that punitive damages should be dismissed with respect to Counts I and II of the complaint. In her brief in opposition, plaintiff concedes that "punitive damages cannot be awarded against a government Defendant such as Western Wayne School District . . . ." (Doc. 16, Pl.'s Mem. of Law in Opp'n at 10). Thus, the court will grant the District Defendants' request to dismiss punitive damages because Falonk will be dismissed from this action and a claim for punitive damages cannot be maintained against the School District.

### Conclusion

For the reasons stated above, the District Defendants' motion to dismiss will be granted in part and denied in part. We will dismiss Count I, gender discrimination under Title VII. The motion to dismiss will further be granted with respect to the First Amendment and civil conspiracy portions of Count II. We will also dismiss the punitive damages claim in Count II. Defendant Falonk will be completely dismissed from this action. After the dismissal of these claims, pending in the case will be the Fourteenth Amendment equal protection claim portion of Count II against Defendant Western Wayne and Count III against the Western Wayne Education Association. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KRISTIN WILLIAMS,** | : | **No. 3:12cv2074** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **WESTERN WAYNE SCHOOL** | : | |
| **DISTRICT, ANDREW FALONK and** | : | |
| **WESTERN WAYNE EDUCATIONAL** | : | |
| **ASSOCIATION,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 3rd day of September 2013, Defendants Western

Wayne School District and Andrew Falonk's motion to dismiss (Doc. 10) is

**GRANTED IN PART** and **DENIED IN PART** as follows:

(1) The motion is **GRANTED** with respect to Plaintiff Kristin Williams'

claims for gender discrimination under Title VII. Count I is **DISMISSED**

for failure to exhaust administrative remedies;

(2) The motion is **GRANTED** with respect to all Section 1983 civil rights

claims against Defendant Andrew Falonk. Defendant Andrew Falonk is

**DISMISSED** from this action;

(3) The motion is **GRANTED** with respect to the First Amendment and

civil conspiracy claims against Defendant Western Wayne School

District;

(4) The motion is **GRANTED** with respect to Plaintiff Kristin Williams'

claim for punitive damages against Defendant Western Wayne School

District; and

(5) The remainder of the motion is **DENIED**.


                                                  **BY THE COURT:**

                                                  <u>**s/ James M. Munley**</u>
                                                  **JUDGE JAMES M. MUNLEY**
                                                  **United States District Court**